IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
                            DALLAS DIVISION

UNITED STATES OF AMERICA,        §
                                 §
                    Plaintiff,   §
                                 §   Criminal No. 3:06-CR-321-D
VS.                              §
                                 §
MICHAEL LEE HANNAH,              §
                                 §
                    Defendant.   §

                         MEMORANDUM OPINION
                           AND ORDER

     Defendant Michael Lee Hannah ("Hannah"), charged in a two-
count indictment with possession of keys or locks adopted by the
post office and theft or receipt of stolen mail matter, in
violation of 18 U.S.C. §§ 1704 and 1708, moves to suppress evidence
obtained from a warrantless search of his person and automobile.
At issue is whether the police had reasonable suspicion to detain
Hannah based in part on the conduct of the passenger in Hannah's
parked car.  Following an evidentiary hearing, the court finds that
the police had reasonable suspicion to detain Hannah until a record
check showed that there were outstanding warrants for his arrest.
The searches of his person and vehicle that followed were
permissibly conducted incident to his arrest and during the
inventorying of his impounded vehicle.  The court therefore denies
the motion to suppress.[1]

_____

     [1]The court sets forth in this memorandum opinion and order its
essential findings.  *See* Fed. R. Crim. P. 12(d).

I

On February 22, 2006, at approximately 11:00 p.m., Officer Vance Johnson ("Officer Johnson") of the Addison, Texas Police Department was conducting a routine patrol of his beat and district. Although Addison includes up-scale areas and high-priced homes, Officer Johnson's beat covered commercial areas with considerable property-, drug-, and intoxication-related criminal activity and people-on-people crimes.

Officer Johnson was patrolling a restaurant parking lot when he observed a parked black Chevy Tahoe with its motor and lights off. He saw two occupants in the vehicle. Officer Johnson drove past the Tahoe at a slow speed, circled around the lot, and drove past it again. Because he observed what he considered suspicious circumstances, Officer Johnson "marked out" with his dispatcher, signaling that he was "5-8," i.e., he was investigating suspicious circumstances.

Officer Johnson exited his vehicle and approached the Tahoe on the passenger side. When he was about 20 feet away, the passenger door opened and the passenger, later identified as Avery Washington ("Washington"), exited the vehicle and approached the officer. Officer Johnson introduced himself and asked Washington what was going on. Washington responded that they had just called in an order to-go from the restaurant but had changed their minds and were going to eat inside. Officer Johnson then asked Washington if

- 2 -

he had anything illegal on him.  Washington replied, "no," but immediately told Officer Johnson "you can search my car."  Officer Johnson thought Washington was referring to the Tahoe.  He later determined that Washington was referring to a second car, parked on the other side of the Tahoe.

Officer Johnson considered Washington's immediate response that "you can search my car" to be suspicious and to indicate that both occupants possessed narcotics or had just completed criminal conduct, and he radioed for back up.  Officer Johnson had reason to believe the two were then engaged in criminal activity, or had already completed criminal activity.  In his experience making drug-related arrests, suspects act together, and he believed the two occupants could have been in the middle of a drug transaction.  He considered it suspicious that two persons had come in separate vehicles to place a to-go order.  He did not consider it plausible that two people would place a to-go order, drive two cars to the restaurant, meet in the parking lot, one person would exit his vehicle and get into the other's, the two would converse, and then they would decide to go inside and eat rather than pick up the food to-go.

While Officer Johnson was talking with Washington, defendant Hannah began to exit the driver side of the Tahoe.  For his own safety, Officer Johnson told Hannah to stop where he was and to have a seat in the car.  He then asked Washington for

- 3 -

identification, and he produced a Texas driver license in the name
of "Avery M. Washington." Officer Johnson then asked Washington to
step to the back of the Tahoe so that he could get Hannah's side of
the story.

Officer Johnson next asked Hannah (who was seated in the
Tahoe) for identification, but he was unable to produce any.
Instead, he orally identified himself as "Michael Hannah" and
provided his date of birth. After the back up unit arrived,
Officer Johnson asked Hannah to exit the vehicle. He patted him
down for his own safety. Officer Johnson then requested Hannah's
consent to search his pockets and vehicle, and he declined.
Officer Johnson observed that Hannah's eyes were red and bloodshot,
with dark circles. He asked Hannah if he had used marihuana or
drugs, and Hannah responded that he had not taken narcotics and
that there was nothing illegal in the vehicle.

Officer Johnson then asked the dispatcher to run both
subjects, meaning to determine whether they had any outstanding
warrants. He did this for officer safety, but he would have
requested this for Hannah anyway because Hannah did not have any
identification with him. In Officer Johnson's experience, such
persons usually are wanted or have suspended driver licenses.

At this point, Officer Johnson returned to Washington and
inquired whether he had any weapons. Washington responded that he
had a pocket knife, and he consented to the officer's removing it.

Officer Johnson then asked him whether he had anything illegal, and Washington responded that he had a bag in his car (i.e., the vehicle parked next to the Tahoe).  The officer also observed a pit bull dog in that vehicle.  Officer Johnson asked Washington what was in the bag and, with Washington's consent, he obtained the bag from the vehicle.  Washington said there was "ice" in the bag, which Officer Johnson understood to mean crystal methamphetamine. Washington also identified other drugs in the bag.  Officer Johnson then placed him under arrest, handcuffed him, and seized the bag.

Hannah was being detained at this time by a back-up unit officer.  During the detention, Officer Johnson received a call from the dispatcher, who stated that there were five active warrants——two for felonies——for Hannah's arrest.[2]  Officer Johnson then placed Hannah under arrest.  Incident to the arrest, another officer searched him and found, *inter alia*, hand-made skeleton-type keys.  During the inventory search conducted after the vehicle was impounded, Addison police found drugs, a .38 caliber pistol, two United States Postal Service arrow locks, and pieces of mail addressed to other people.  Hannah was later charged in a two-count indictment with possession of keys or locks adopted by the post

---

[2]During his closing argument at the hearing, Hannah's counsel cited *Miller v. State*, 736 S.W.2d 643 (Tex. Crim. App. 1987) (on rehearing), for the proposition that the government was obligated to produce the warrants in court rather than merely to assert that they were confirmed.  *Miller* is a state court decision, however, that is not binding on this court.

office and theft or receipt of stolen mail matter, in violation of 18 U.S.C. §§ 1704 and 1708.

Hannah argues that when Officer Johnson ordered him back into his vehicle, the encounter between them was transformed into a detention.  He maintains that this detention violated his Fourth Amendment rights because it was effected without a warrant or reasonable suspicion.

The government contends that Hannah's detention did not violate the Fourth Amendment because Officer Johnson had reasonable suspicion to detain Hannah at the point when Washington stepped out of the vehicle and voluntarily told Officer Johnson, "you can search my car."[3]   It argues that this created a reasonable suspicion that criminal activity was afoot, and that this reasonable suspicion justified the detention that eventually led Officer Johnson to ask Hannah for identification, discover that he could not produce it, request a record check, and learn of the several outstanding warrants for Hannah's arrest.

---

[3]The government argued in its response brief that the contact between Officer Johnson and Hannah did not constitute a detention. At the suppression hearing, however, it conceded that when Officer Johnson directed Hannah to sit back down in his car, Hannah no longer would have felt free to leave, so he was detained at that point.

II

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. But "[n]ot every encounter between a citizen and a police officer implicates the Fourth Amendment." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002) (citing *INS v. Delgado*, 466 U.S. 210, 215 (1984)).

> The Supreme Court has identified three tiers of citizen-police contact for purposes of fourth amendment analysis. The first tier, communication between police and citizens, involves no coercion or detention and does not implicate the fourth amendment. An investigatory stop, at the second level of contact, is a brief seizure that must be supported by reasonable suspicion, that is specific and articulable facts, which taken together with rational inferences from these facts reasonably warrant an intrusion. Finally, a full scale arrest must be supported by probable cause.

*United States v. Zukas*, 843 F.2d 179, 181-82 (5th Cir. 1988) (citations and internal quotation marks omitted). The second sort of police encounter is governed by the principles of *Terry v. Ohio*, 392 U.S. 1 (1968).

> Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place . . . . The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a

- 7 -

> particularized and objective basis for
> suspecting legal wrongdoing. We have stated
> previously that reasonable suspicion exists
> when the officer can point to specific and
> articulable facts which, taken together with
> rational inferences from those facts,
> reasonably warrant the search and seizure. In
> evaluating the totality of the circumstances,
> a court may not consider the relevant factors
> in isolation from each other. In scrutinizing
> the officer's basis for suspecting wrongdoing,
> it is clear that the officer's mere hunch will
> not suffice. It is also clear, however, that
> reasonable suspicion need not rise to the
> level of probable cause.

*United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotation marks and some citations omitted), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1449 (2006).

"The government bears the burden of establishing by a preponderance of the evidence two elements under *Terry*: that the stop was justified at its inception and that the Fourth Amendment intrusions were reasonably related in scope to the circumstance that justified the interference in the first place." *United States v. Johnson*, 2006 WL 1041148, at *3 (N.D. Tex. Apr. 20, 2006) (Fitzwater, J.) (citing *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003); *United States v. Riley*, 968 F.2d 422, 424-25 (5th Cir. 1992)). The Supreme Court has long held that the "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)) (internal quotation marks omitted). "Reasonableness, measured 'in objective terms by examining the

totality of the circumstances,' 'eschew[s] bright-line rules, instead emphasizing the fact-specific nature of the . . . inquiry.'" *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc) (quoting *Robinette,* 519 U.S. at 39). "[T]he Supreme Court has emphasized that courts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (citations and internal quotation marks omitted).

### III

### A

The government maintains that Officer Johnson was justified in detaining Hannah because he had reasonable suspicion based on the suspicious behavior of Washington and the circumstances leading up to the detention. Officer Johnson testified that the area in which Hannah's Tahoe was parked is a high crime area, and that he knew from past experience that drug deals frequently took place in parking lots such as the one in question, inside a parked car. He also testified that Washington's unprovoked response that "you can search my car" was an unusual one in reply to casual questioning about whether he had anything illegal on him, and that this response led him to believe that the two occupants possessed narcotics or had just completed criminal conduct.

Hannah argues that two men sitting in a parked car in the

parking lot of a restaurant that is open for business does not support a reasonable suspicion of criminal activity. He asserted during the suppression hearing that it was impermissible and a violation of his Fourth Amendment rights for Officer Johnson to use his suspicions about Washington to justify detaining Hannah. Hannah contends it is improper to transfer to him what Washington was doing and saying for purposes of determining whether there was reasonable suspicion to detain him.

B

In resolving Hannah's motion, the court must decide whether Officer Johnson permissibly relied on Washington's conduct when he determined that he had reasonable suspicion to detain Hannah.[4]

It is well established that, when courts engage in a *Terry* analysis, they must not isolate events or details in determining whether the police had reasonable suspicion. *See Lopez-Moreno*, 420 F.3d at 430. Rather, the Supreme Court mandates that courts consider the totality of the circumstances. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119, 126-127 (2000) ("The concept of reasonable suspicion . . . is not readily, or even usefully, reduced to a neat set of legal rules, but must be determined by looking to the totality of the circumstances—the whole picture." (internal quotation marks and citations omitted)). For example, in *United*

_____

[4]At the suppression hearing, Hannah appeared to concede that there was reasonable suspicion to justify the detention of Washington.

- 10 -

*States v. Arvizu*, 534 U.S. 266, 274 (2002), the Court cautioned against a "divide-and-conquer analysis."   In *Arvizu* the Court examined the importance of considering the "totality of the circumstances," rather than separating each individual act by a criminal suspect when considering whether there was reasonable suspicion.   *Id.*   It explained:

> The [Court of Appeals]'s evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase.   The court appeared to believe that each observation by [Officer] Stoddard that was by itself readily susceptible to an innocent explanation was entitled to "no weight." *Terry*, however, precludes this sort of divide-and-conquer analysis.   The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another.   Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation."

*Id.* (internal citations omitted).

When Washington's conduct is considered, the finding that Officer Johnson had reasonable suspicion to detain Hannah follows easily from the evidence developed at the hearing.   Officer Johnson articulated several facts that created a reasonable suspicion to justify detaining Washington and Hannah.   First, he observed the two men sitting in a parked car outside a restaurant in a high-crime area of Addison.   When he approached the vehicle, the passenger immediately stepped from the car.   When he inquired

whether the passenger had any illegal substances on him, the passenger stated "no, but you can search my car." Based on Officer Johnson's experience, he had reason to believe the two were then engaged in criminal activity, or had already completed criminal activity (possession of narcotics). In his experience making drug-related arrests, suspects act together, and they could have been in the middle of a drug transaction. Moreover, for the reasons explained above, he considered suspicious the explanation given concerning placing a to-go order at the nearby restaurant and then deciding to eat inside.

Considered in their totality, these facts support a finding that Officer Johnson had reasonable suspicion that Hannah, too, was then engaged, or had engaged, in criminal activity. The court therefore finds that Officer Johnson's detention of Hannah was justified at its inception and supported by specific and articulable facts.

C

In his motion to suppress, Hannah appeared to challenge the duration of the detention. At the hearing, however, his argument was limited to the premise that Officer Johnson lacked reasonable suspicion to detain him at all. The court need not therefore address whether the detention lasted longer than was reasonable under the circumstances. Moreover, as the court explains above, Officer Johnson had reasonable suspicion based on Washington's

conduct to detain Hannah for the period in question.

Citing *United States v. Dortch*, 199 F.3d 193 (5th Cir. 1999), and *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993), Hannah's counsel asserted during closing argument that the stop must be tailored to the underlying justification. It is unclear whether Hannah intends to challenge his detention under the second element of *Terry*——i.e., whether the Fourth Amendment intrusions were reasonably related in scope to the circumstance that justified the interference in the first place——because Hannah's counsel followed this assertion by contending that Hannah should not have been patted down since he had done nothing wrong. Hannah's counsel also asserted that when the officer told Hannah to have a seat, he had nothing on him. And he argued that the government was attempting to transfer Washington's conduct to Hannah and was confusing Washington's actions with Hannah's. Regardless of the intended purpose of the argument, the court holds that the detention was justified at its inception and that the intrusions were reasonably related in scope to the circumstances that justified the detention.

First, Hannah was detained based on Officer Johnson's reasonable suspicions about both occupants of the vehicle arising from Washington's conduct and from his assessment of the suspicious circumstances presented during his encounter with both men. Second, as soon as Hannah was detained, he gave Officer Johnson his

- 13 -

name and date of birth, but failed to provide a driver license.  It is well established that "if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Lopez-Moreno*, 420 F.3d at 431 (citing *Brigham*, 382 F.3d at 507; *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003)).  Based on Officer Johnson's experience, Hannah's failure to provide his license raised a reasonable suspicion that there might be outstanding warrants for his arrest.  This suspicion justified detaining Hannah until dispatch notified Officer Johnson whether there were in fact outstanding warrants.

D

In sum, based on the totality of the circumstances presented by Washington's and Hannah's conduct, Officer Johnson had reasonable suspicion to detain Hannah in his vehicle, because he had a particularized and objective basis for suspecting him of having engaged, or being engaged, in criminal conduct.  After Hannah was detained, he could not produce a driver license in response to Officer Johnson's request.  In Officer Johnson's experience, one reason drivers do not possess identification is because they are wanted.  Hannah was permissibly detained during the time it took for Addison police to check for outstanding warrants and inform Officer Johnson of the results.  When the

dispatcher notified Officer Johnson that there were outstanding warrants for Hannah's arrest, Officer Johnson then had probable cause to arrest Hannah.   The searches of Hannah's person and vehicle that followed were permissible searches incident to his arrest and a permissible inventory search of his vehicle following its impoundment.

                              *       *       *

     Accordingly, Hannah's November 29, 2006 motion to suppress evidence is denied.

     **SO ORDERED.**

     January 31, 2007.


                                   _____
                                   SIDNEY A. FITZWATER
                                   UNITED STATES DISTRICT JUDGE